EIB

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

CASE NO. 01-6291-CR-FERGUSON

MAGISTRATE JUDGE SNOW

18 U.S.C. § 1832(a)(3) and (a)(5)
18 U.S.C. § 2
18 U.S.C. § 1834

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>JOSEPH P. PETROLINO, )<br>  a/k/a "Joe" )<br>and )<br>ERIC C. SIVERSEN, )<br>  a/k/a "Tom," )<br>)<br>               Defendants. )<br>_____) | **INDICTMENT** |

The Grand Jury charges that:

## COUNT 1

### CONSPIRACY TO POSSESS STOLEN TRADE SECRETS

### GENERAL ALLEGATIONS

At all times relevant to this Indictment:

1. Defendant **JOSEPH P. PETROLINO** was a securities broker affiliated with a securities broker-dealer.

2. Defendant **ERIC C. SIVERSEN** was a securities broker affiliated with the same securities

3/8

broker-dealer as defendant **JOSEPH P. PETROLINO**.

3.     First Union Securities Financial Network, Inc., f/k/a JWGenesis Financial Corp. ("First Union Securities"), was a securities broker-dealer headquartered out of offices in Boca Raton, Florida. First Union Securities and its affiliates served thousands of investors throughout the United States from more than 150 independent offices. First Union Securities offered a full array of quality investment products and services including stocks, options, bonds, unit investment trusts, government securities, certificates of deposit, mutual funds, annuities and other products. First Union Securities was a wholly-owned subsidiary of First Union Corporation.

4.     First Union Securities' customer transactions were processed through one of two clearing firms, Bear Stearns Securities Corp. ("Bear Stearns"), or Fiserv Correspondent Services, Inc. These clearing firms prepared and sent a statement of account to every First Union Securities customer periodically, usually every month. Bear Stearns provided First Union Securities, in computer compact disk ("CD") format, with copies of the monthly statements of account it sent to First Union Securities customers. Specifically, Bear Stearns provided two computer CDs every month to First Union Securities. Each CD contained a full set of the statements of account sent to First Union Securities customers for the respective month.

5.     Statements of account sent to First Union Securities customers contained, among other things, the following information:

      a.     name and address of the customer;

      b.     account number and type;

      c.     a financial summary showing portfolio composition;

      d.     graph depicting portfolio allocation;

      e.     account portfolio holdings;

  f. transaction detail for the respective statement period;

  g. fund activity;

  h. income summary;

  i. cash flow analysis; and

  j. office address and identity of registered representative servicing the account.

 6. First Union Securities took reasonable measures to protect the secrecy of the customers' statements of account contained in the computer CDs. The computer CDs were sent addressed to First Union Securities' Director of Compliance and upon receipt were stored in a file cabinet located in a room next to the Legal and Compliance Departments at First Union Securities. Access to this room and file cabinet was limited to authorized personnel only. This room was locked after business hours and only authorized personnel had access to the key required to open the room. The computer CDs required a password to gain access to the First Union Securities customer statements of account.

 7. First Union Securities required its securities brokers to safeguard confidential information regarding, among other things, its customers, customer information and all other proprietary information about the firm. It required its securities brokers to sign a Confidentiality Agreement acknowledging this firm policy.

 8. First Union Corporation, First Union Securities' parent company, had an employee handbook wherein it was provided that confidential information about existing or potential customers was to be used solely for the company's business purposes and never for personal gain by an employee. It further provided that employees agreed and acknowledged that it was prohibited for them to disclose confidential information about the company's business or customers during their employment and afterwards.

9. In its employee handbook, First Union Corporation stated that it considered customer identities, lists and information to be trade secrets and that it prohibited its employees from misappropriating company trade secrets.

10. First Union Securities derived independent economic value from its customers and from making sure that its customers' identities and other relevant information was not generally known to competitors and to the public.

## THE CONSPIRACY

11. Beginning in or around August 2001, and continuing through in or around September 2001, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**JOSEPH P. PETROLINO,**
a/k/a "Joe"
and
**ERIC C. SIVERSEN,**
a/k/a "Tom,"

did, with intent to convert a trade secret, knowingly and willfully combine, conspire, confederate and agree with each other and with others unknown to the Grand Jury, to knowingly receive and possess a trade secret, that is, proprietary customer information owned by First Union Securities Financial Network, Inc., f/k/a JWGenesis Financial Corp., knowing the same to have been stolen and appropriated, obtained, and converted without authorization, such trade secret having been related to and included in a product that is produced for and placed in interstate and foreign commerce, to the economic benefit of someone other than the owner thereof, while intending and knowing that the offense would injure the owner of that trade secret, namely, First Union Securities Financial Network, Inc., f/k/a JWGenesis Financial Corp., in violation of Title 18, United States Code, Section 1832(a)(3).

## PURPOSE AND OBJECT OF THE CONSPIRACY

12. It was the purpose and object of the conspiracy for the defendants to receive and possess

trade secrets, that is, proprietary customer information stolen from First Union Securities and to use this information for the economic benefit of the defendants and to the detriment of First Union Securities.

## MANNER AND MEANS OF THE CONSPIRACY

The manner and means by which the defendants sought to accomplish the object of the conspiracy included, among others, the following:

13. The defendants obtained access to a computer CD containing proprietary personal and financial information of a large number of First Union Securities customers which was stolen from First Union Securities.

14. The defendants made copies of the stolen computer CD containing First Union Securities proprietary customer information and provided these copies to others for their personal use and benefit and to the detriment of First Union Securities.

15. The defendants accessed the First Union Securities proprietary customer information contained in the stolen computer CD and used some of said customer information for their own personal use and benefit and to the detriment of First Union Securities.

16. The defendants sold a copy of the stolen computer CD containing First Union Securities proprietary customer information for $3,800.00 in cash.

## OVERT ACTS

In furtherance of the conspiracy and to achieve the object thereof, at least one of the co-conspirators committed or caused to be committed, in the Southern District of Florida and elsewhere, at least one of the following overt acts, among others:

17. On or about August 17, 2001, defendant **JOSEPH P. PETROLINO** contacted an individual, who at the time was cooperating with law enforcement authorities (hereinafter referred to as "cooperating witness"), and offered to sell him a computer CD containing personal and financial

information of a large number of First Union Securities' customers for $5,000.00.

18.   On or about August 24, 2001, defendant **JOSEPH P. PETROLINO** sent, via facsimile transmission, to the cooperating witness a sample of the First Union Securities customer information he had offered to sell him. Specifically, defendant **JOSEPH P. PETROLINO** provided copies of the first page of statements of account for the period ending September 29, 2000, relating to two First Union Securities customers.

19.   On or about August 24, 2001, defendant **JOSEPH P. PETROLINO** agreed to sell a copy of the computer CD containing the First Union Securities proprietary customer information to the cooperating witness for $3,800.00 in cash.

20.   On or about August 29, 2001, defendant **JOSEPH P. PETROLINO** advised the cooperating witness that he would not meet personally with him but instead would be sending an individual who worked for him, and whom he trusted, to meet with the cooperating witness in order to execute the sale of the computer CD for the agreed $3,800.00 in cash. Defendant **JOSEPH P. PETROLINO** also advised that a password required to access the customer information in the computer CD would be provided along with the computer CD.

21.   On or about August 30, 2001, defendant **ERIC C. SIVERSEN** contacted the cooperating witness and arranged to meet with him at a parking lot of a shoe store in order to execute the sale of the computer CD containing the First Union Securities proprietary customer information.

22.   On or about August 30, 2001, defendant **ERIC C. SIVERSEN** met the cooperating witness and an undercover law enforcement agent at the previously arranged location and provided to them the computer CD and a password to access the customer information contained in such CD. In return, defendant **ERIC C. SIVERSEN** received the agreed $3,800.00 in cash as payment for the CD.

23.   On or about September 4, 2001, defendants **JOSEPH P. PETROLINO** and **ERIC C.**

**SIVERSEN** met with the cooperating witness and the undercover law enforcement agent, at the cooperating witness's office, concerning the computer CD that the defendants had sold to them.

24.   On or about September 5, 2001, defendant **JOSEPH P. PETROLINO** met again with the cooperating witness, at the cooperating witness's office, concerning the computer CD containing the First Union Securities proprietary customer information.

All in violation of Title 18, United States Code, Section 1832(a)(5).

## COUNT 2

### POSSESSION OF STOLEN TRADE SECRETS

1.   The allegations contained in paragraphs 1 through 10 and 12 through 24 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

2.   Beginning in or around August 2001, and continuing through in or around September 2001, at Broward County, in the Southern District of Florida, and elsewhere, the defendants,

**JOSEPH P. PETROLINO,**
a/k/a "Joe"
and
**ERIC C. SIVERSEN,**
a/k/a "Tom,"

did, with intent to convert a trade secret, knowingly receive and possess a trade secret, that is, proprietary customer information owned by First Union Securities Financial Network, Inc., f/k/a JW Genesis Financial Services, Inc., knowing the same to have been stolen and appropriated, obtained, and converted without authorization, such trade secret having been related to and included in a product that is produced for and placed in interstate and foreign commerce, to the economic benefit of anyone other than the owner thereof, while intending and knowing that the offense would injure the owner of the trade secret, namely, First Union Securities Financial Network, Inc., f/k/a JW Genesis Financial Services, Inc., in violation of Title 18, United States Code, Sections 1832(a)(3) and 2.

## FORFEITURE ALLEGATIONS

1.      The allegations contained in Counts 1 and 2 of this Indictment are realleged and incorporated by reference, as though fully set forth herein.

2.      Pursuant to 18 U.S.C. § 1834 and in accordance with the provisions of 21 U.S.C. § 853, upon the conviction for any violation of 18 U.S.C. § 1832, the defendants, **JOSEPH P. PETROLINO** and **ERIC C. SIVERSEN**, shall forfeit to the United States any property constituting, or derived from any proceeds obtained directly or indirectly, as a result of such violation and any property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation. The property subject to forfeiture includes, but is not limited to, the sum of $3,800.00 in United States currency.

3.      If any of the property described in the forfeiture section of this indictment, as a result of any act or omission of the defendants,

   a.   cannot be located upon the exercise of due diligence;

   b.   has been transferred or sold to, or deposited with, a third party;

   c.   has been placed beyond the jurisdiction of the court;

   d.   has been substantially diminished in value, or

   e.   has been commingled with other property which cannot be divided without difficulty,

it is the intention of the United States to seek forfeiture of any other property of the defendants, up to the value of the forfeitable property described above.

A TRUE BILL

_____
FOREPERSON

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
ERIC I. BUSTILLO
ASSISTANT UNITED STATES ATTORNEY

_____
RICHARD BOSCOVICH
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

JOSEPH P. PETROLINO, et al.

CASE NO. 01-6291-CR-FERGUSON

MAGISTRATE JUDGE SNOW

**CERTIFICATE OF TRIAL ATTORNEY***

Superseding Case Information

| | | |
|---|---|---|
| New Defendant(s) | Yes ___ | No ___ |
| Number of New Defendants | ___ | |
| Total number of counts | ___ | |

**Court Division:** (Select One)

___ Miami    ___ Key West
X  FTL       ___ WPB    ___ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No) No
   List language and/or dialect _____

4. This case will take  5  days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                    (Check only one)

   I   0 to 5 days      X      Petty       ___
   II  6 to 10 days     ___    Minor       ___
   III 11 to 20 days    ___    Misdem.     ___
   IV  21 to 60 days    ___    Felony       X
   V   61 days and over ___

   FILED BY ___ 01 NOV 29 PM 4:26  CLERK

6. Has this case been previously filed in this District Court? (Yes or No) No
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) No
   If yes:
   Magistrate Case No. _____
   Related Miscellaneous numbers: _____
   Defendant(s) in federal custody as of _____
   Defendant(s) in state custody as of _____
   Rule 20 from the _____   District of _____

   Is this a potential death penalty case? (Yes or No) No

7. Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? ___ Yes  X  No   If yes, was it pending in the Central Region? ___ Yes  X  No

8. Did this case originate in the Narcotics Section, Miami? ___ Yes  X  No

ERIC I. BUSTILLO
ASSISTANT UNITED STATES ATTORNEY
Florida Bar No. 831093

*Penalty Sheet(s) attached                                    REV.6/27/00

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
PENALTY SHEET

**Defendant's Name:** Joseph P. Petrolino     **Case No:** 01-6291-CR-FERGUSON MAGISTRATE JUDGE SNOW

Count: 1

Conspiracy to possess stolen trade secrets

18 U.S.C. §§ 1832(a)(3) and (a)(5)

**\*Max. Penalty:** 10 years of imprisonment; $250,000 fine
=================================================================
Count: 2

Possession of stolen trade secrets

18 U.S.C. § 1832(a)(3)

**\*Max. Penalty:** 10 years of imprisonment; $250,000 fine
=================================================================
Count:

**\*Max. Penalty:**
=================================================================
Count:

**\*Max. Penalty:**
=================================================================
Count:

**\*Max. Penalty:**
=================================================================
    \*Refers only to possible term of incarceration, does not
    include possible fines, restitution, special assessments,
    parole terms, or forfeitures that may be applicable.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
<u>PENALTY SHEET</u>

Defendant's Name: <u>Eric C. Siverson</u>   Case No. 01-6291-CR-FERGUSON

MAGISTRATE JUDGE SNOW

Count: 1

<u>Conspiracy to possess stolen trade secrets</u>

<u>18 U.S.C. §§ 1832(a)(3) and (a)(5)</u>

*Max. Penalty: 10 years of imprisonment; $250,000 fine
=================================================================
Count: 2

<u>Possession of stolen trade secrets</u>

<u>18 U.S.C. § 1832(a)(3)</u>

*Max. Penalty: 10 years of imprisonment; $250,000 fine
=================================================================
Count:

_____

*Max. Penalty:
=================================================================
Count:

_____

*Max. Penalty:
=================================================================
Count:

_____

*Max. Penalty:
=================================================================
   *Refers only to possible term of incarceration, does not
   include possible fines, restitution, special assessments,
   parole terms, or forfeitures that may be applicable.

FORM DBD-34
JUN. 85

Case No. _____

# UNITED STATES DISTRICT COURT

_____ SOUTHERN _____ District of _____ FLORIDA _____

## THE UNITED STATES OF AMERICA

vs.

JOSEPH P. PETROLINO,
a/k/a "Joe" and

ERIC C. SIVERSEN,
a/k/a "Tom"

## INDICTMENT

IN VIOLATION OF: 18 U.S.C. § 1834
18 U.S.C. § 1832(a)(3) and (a)(5)
18 U.S.C. § 2

A true bill.

_____
Foreman

Filed in open court this _____ day,

of _____ A.D. 20 ___

_____
Clerk

Bail, $ _____